UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RICARDO FREENY,                    :
                                   :    Civ. No. 20-18278 (RMB-KMW)
                Plaintiff          :
                                   :
        v.                         :         **OPINION**
                                   :
CAMDEN COUNTY, *et al.*,            :
                                   :
                Defendants         :


BUMB, DISTRICT JUDGE

        Plaintiff Ricardo Freeny, a pretrial detainee confined in

Burlington County Detention Center in Mt. Holly, New Jersey, brings

this civil rights complaint under 42 U.S.C. § 1983, the New Jersey

Civil Rights Act ("NJCRA") and New Jersey tort law. (Compl., Dkt.

No. 1.) Plaintiff filed an application to proceed without

prepayment of fees under 28 U.S.C. § 1915 (Dkt. No. 1-1), which

established his financial eligibility for *in forma pauperis*

("IFP") status and will be granted.

        When a prisoner is permitted to proceed without prepayment of

the filing fee or when the prisoner pays the filing fee for a civil

action and seeks redress from a governmental entity, officer or

employee of a governmental entity or brings claims concerning

prison conditions, 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42

U.S.C. § 1997e(c)(1) require courts to review the complaint and

*sua sponte* dismiss any claims that are (1) frivolous or malicious;

(2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court will dismiss the complaint without prejudice, with leave to file an amended complaint.

I.    *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" Id. (internal quotation marks omitted). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.  DISCUSSION

A.  The Complaint

Plaintiff submitted his complaint by cover letter dated November 12, 2020, received by the Court on December 7, 2020. The complaint alleges civil rights and tort claims against 36 defendants involved in Plaintiff's arrest on November 14, 2018, in Burlington County, New Jersey, and his subsequent prosecution for

tri-county armed robberies. The defendants to the civil rights complaint include three counties, county police officers, state troopers, a 9-1-1 dispatcher, a prosecutor, and a public defender and public defender investigator. Plaintiff asserts claims of racial profiling, false arrest/imprisonment, malicious prosecution, abuse of process, negligence and gross negligence. He accuses each defendant of failing to restrain the other defendants from violating his rights. At the time of filing, Plaintiff was a pretrial detainee. For relief, Plaintiff seeks damages and declaratory and injunctive relief against defendants in their individual and official capacities. Plaintiff also seeks appointment of pro bono counsel, leave to amend the complaint, discovery, and to stay this action pending the conclusion of his criminal proceedings.

Specifically, Plaintiff alleges that on November 13, 2018, a Camden County judge issued, without probable cause, a communication data and search warrant to track a 2019 Dodge Charger. The affidavit in support of the warrant, written by Cherry Hill Police Officer Rene Lobodov, stated the Dodge Charger was leased by James W. Wood Jr.'s wife and was commonly operated by Wood. Wood is a co-defendant in Plaintiff's criminal case. In the affidavit, Lobodov summarized multiple robberies that occurred in Clemonton, Cherry Hill, Mount Ephraim and Maple Shade, New Jersey in the past two weeks. Surveillance video from the Cherry Hill

robbery on November 9 showed what appeared to be a blue Dodge
Charger, but did not reveal the license plate. Plaintiff alleges
Lobodov linked the Dodge Charger from the Cherry Hill robbery to
the license plate number of the Dodge Charger associated with the
Maple Shade robbery based on misinformation provided by officers
of the Mount Ephraim Police Department.

Specifically, Lobodov wrote that the Dodge Charger was
stopped in Mount Ephraim sometime after the Maple Shade robbery,
which occurred at 18:27 hours on November 11. Although it is
unclear from the complaint, it appears that the license plate was
identified by surveillance video when the car was stopped in Mount
Ephraim after the Maple Shade robbery. In the affidavit for the
warrant, Lobodov also described a conversation that he had on
November 12 with Mount Ephraim Police Officer William Errigo, who
said he had an encounter with the Dodge Charger "later that night."
Plaintiff alleges this was false because the encounter between the
Dodge Charger and the Mount Ephraim police occurred before the
Maple Shade robbery on November 11. The Court construes the
complaint to allege Lobodov and Errigo provided false information
to link the license plate of the Dodge Charger involved in the
robberies to Wood, his co-defendant.

In the affidavit, Lobodov further described how police
officers followed the Dodge Charger to the Bellmawr SureStay Hotel
on November 12, 2018. The officers learned Wood had rented a room

in the hotel for November 9 through November 11, when some of the robberies occurred. Bellmawr police determined the Dodge Charger was still parked at the hotel on November 12. Police officers had ascertained that the hotel room was rented for November 12 in the name of Ricardo Freeny.

Plaintiff alleges that police officers tricked him into signing the hotel room registration for a room that was rented by Wood. Officers told the hotel manager to call the room after Wood had left the parking lot in the Dodge Charger, and told Plaintiff that he could not remain in the room unless he signed the hotel registration. Plaintiff asserts that prior to obtaining his signature on the hotel registration, an assistant prosecutor had told the police officers they did not have sufficient probable cause to obtain a GPS and search warrant for the Dodge Charger. This is why police allegedly tricked Plaintiff into signing the hotel registration. Plaintiff further alleges the GPS tracker was installed on November 14, 2018, in violation of the court's order that it be installed by a specially trained member of the prosecutor's office.

On November 14, 2018, Plaintiff alleges he was walking to a bus stop in Willingboro, New Jersey, when he noticed a lot of police activity. Apparently, Plaintiff was arrested around this time, but the connection between Plaintiff's arrest and the incident he alleges concerning a mistaken a 9-1-1 dispatch of

"shots fired, officer needs assistance" is unclear. (Compl. ¶¶ 68-83.) Plaintiff alleges he was racially profiled and arrested because he is black. He attached to the complaint a newspaper article, "Burlington County Police Officers To Get Bias Training." (Exhibit, Dkt. No. 1 at 81-82.)

Plaintiff also alleges that his public defender pool attorney, Michael A. Smolensky, and the public defender investigator, Ivan Mendez, conspired with the assistant prosecutor, Jamie Hutchinson, to force Plaintiff to use a recorded phone line in the jail. He alleges that Smolensky coerced Mendez into falsifying investigative reports and documents to create an illusion that Plaintiff admitted his guilt. The allegations concerning Plaintiff's legal proceedings are very disjointed and the Court cannot discern much of what happened or when.

Plaintiff alleges seven grounds for relief, as follows:

COUNT I: DETAINED PLAINTIFF UNLAWFULLY WITHOUT PROBABLE CAUSE

COUNT II: THE RIGHT AGAINST SELF-INCRIMINATION

COUNT III: LACK OF EVIDENCE & PROBABLE CAUSE

COUNT IV: WARRANT BASED ON FALSE REPRESENTATION

COUNT V: NEGLIGENCE & GROSS NEGLIGENCE

COUNT VI: DENYING PLAINTIFF A CRIMINAL DEFENSE ATTORNEY WHO DOES NOT CONSPIRE WITH THE STATE ASSISTANT PROSECUTOR

> COUNT VII: DENYING PLAINTIFF A CRIMINAL DEFENSE PUBLIC DEFENDER INVESTIGATOR WHO DOES NOT CONSPIRE WITH THE STATE ASSISTANT PROSECUTOR

B.    Claims Under 42 U.S.C. § 1983

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1998); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

1.    *Selective Enforcement*

A Fourteenth Amendment selective-enforcement claim under the Equal Protection Clause, has two elements, that the plaintiff: (1) was treated differently from other similarly situated individuals, and (2) "that this selective treatment was based on an

'unjustifiable standard, such as race, or religion, or some other arbitrary factor, ... or to prevent the exercise of a fundamental right.'" Dique v. New Jersey State Police, 603 F.3d 181, 184 n. 5 (3d Cir. 2010) (quoting Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993)). Here, Plaintiff has not alleged any similarly situated individuals who were not searched, arrested or prosecuted. See e.g. Bradley v. United States, 299 F.3d 197, 206 (3d Cir. 2002) ("Discriminatory effect may be proven by naming similarly situated members of an unprotected class who were not selected for the same search or, in some cases, by submitting statistical evidence of bias.") Plaintiff attached to the complaint a news article about implicit bias training provided to Burlington County police officers, but the article does not contain any statistical evidence of racial profiling by police officers in Burlington County. The Court will dismiss this claim without prejudice for failure to state a claim.

2. *False Arrest and False Imprisonment*

"The Fourth Amendment prohibits government officials from detaining a person," before and after the start of the legal process, "in the absence of probable cause." Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 918–19 (2017) (citation omitted). "[T]he Fourth Amendment always governs claims of unlawful arrest and pretrial detention when that detention occurs before the

detainee's first appearance before a court." <u>DeLade v. Cargan</u>, 972
F.3d 207, 212 (3d Cir. 2020). Fourteenth Amendment due process
claims may arise sometime after initiation of legal process. <u>Id.</u>

Plaintiff alleges that he was illegally detained without
probable cause on November 14, 2018, after he was walking to a bus
stop in Willingboro, New Jersey. Plaintiff describes an allegedly
mistaken police dispatch of "shots fired, officer needs
assistance" that apparently occurred at the same time he was at
the bus stop in Willingboro. The "shots fired" dispatch arose out
of an incident where Detective McKeown allegedly pulled his service
weapon on an unarmed light-skinned black or Hispanic male, as the
man stepped into a Dunkin Donuts in Westampton, New Jersey. Police
Officer John Doe #4 was recorded on the audio of his body camera,

> He's getting ready to walk in --- doesn't
> brandish a gun --- so with that in mind –the
> guy opens the door with a ski mask --- he takes
> flight --- then the detective takes flight
> after him and that's that! --- There is NO GUN
> BRANDISHED; so what do we have here? --- If
> you want some charges; obstruction or
> resisting arrest, we didn't observe it.

(Compl. ¶ 78.)

John Doe #4 also allegedly said,

> No gun brandished! --- No thumb print! ---
> Technically we have nothing that a crime has
> occurred except for the simple fact that the
> detective in plain clothes identified himself
> as a police officer and a guy took off running.

Plaintiff further alleges that Officer John Doe #5 replied, "I'm not disagreeing at all! -- But guess what? –Two in custody, --- so it doesn't fuckin matter!" Then, John Doe Nos. 4 and 5 turned off the audio recording on their body cameras. Detective Sergeant William Errigo was at the scene in Westampton and allegedly threw a cell phone to the pavement, in an apparent attempt to destroy evidence, while Detective Rene Lobonov watched and did nothing to stop him.

"To determine whether an officer had probable cause for an arrest," courts must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." D.C. v. Wesby, 138 S. Ct. 577, 586 (2018) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Wesby, 138 S. Ct. at 587 (quoting Illinois v. Gates, 462 U.S. 213, 243–244, n. 13 (1983)). Courts must take into account the totality of the circumstances. See id. ("'unprovoked flight upon noticing the police," … 'is certainly suggestive' of wrongdoing and can be treated as 'suspicious behavior' that factors into the totality of the circumstances") (quoting Illinois v. Wardlow, 528 U.S. 119, 124–125 (2000)).

The complaint does not describe how Plaintiff's arrest was associated with the alleged erroneous 9-1-1 dispatch. Plaintiff alleges he was in Willingboro, New Jersey when he noticed police activity, and at the same time two people were arrested in or near a Dunkin Donuts in Westamptom, New Jersey. Plaintiff does not allege that he was one of the two persons arrested in Westampton. Further, Plaintiff does noy explain how the GPS tracking device on the Dodge Charger was part of the arrest. Without additional factual allegations explaining the circumstances of Plaintiff's arrest and subsequent prosecution, the Court is unable to conclude that Plaintiff was arrested and imprisoned without probable cause. The Court will dismiss the false arrest and false imprisonment claims without prejudice. The Court notes that the status of Plaintiff's ongoing state criminal proceeding may affect his ability to bring his Fourth Amendment claims. Heck v. Humphrey serves to bar Section 1983 claims, which, if successful, would impugn the validity of a conviction. Such claims are premature until a plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" 512 U.S. 477, 486–87 (1994).

### 3. *Fabrication of Evidence*

A fabrication of evidence claim under § 1983 does not accrue, thus may not be brought, prior to favorable termination of the plaintiff's prosecution. See McDonough v. Smith, 139 S. Ct. 2149, 2156 (2019) ("McDonough could not bring his fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution.") This requirement "avoids … collateral attacks on criminal judgments through civil litigation." Id. (citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)). Plaintiff has not alleged that the criminal proceedings ended in his favor. Therefore, the Court will dismiss the fabrication of evidence claims without prejudice for failure to state a claim.

### 4. *Self-incrimination*

The Fifth Amendment bars compelling a person to be a witness against himself in a criminal case. U.S. Const., amend. 5. Plaintiff alleges Defendants violated the Fifth Amendment when they tricked him into signing a hotel registration and then used his signature on the hotel registration to obtain a communications data warrant and search warrant for a Dodge Charger operated by his co-defendant. Plaintiff does not allege that he was in police custody when officers allegedly coerced the hotel manager to call, the hotel room and insist that Plaintiff sign the registration, nor has Plaintiff alleged that he was placed under oath and forced to testify about the hotel registration. "The text of the Self-

Incrimination Clause simply cannot support [the] view that the mere use of compulsive questioning, without more, violates the Constitution." <u>Chavez v. Martinez</u>, 538 U.S. 760, 765 (2003). The Court will dismiss the Fifth Amendment self-incrimination claim without prejudice.

The Court will, however, construe this claim as an alleged unreasonable search and seizure under the Fourth Amendment. <u>See e.g.</u> <u>United States v. Ramirez</u>, 976 F.3d 946, 956 (9th Cir. 2020) (finding Fourth Amendment violation where "[i]t was only by posing as police officers investigating a fictitious home burglary that the agents convinced Ramirez to drive home, thereby creating the authority to seize him and his car that did not otherwise exist at the time.") Again, Plaintiff has not alleged that his arrest was made in connection with the search warrant for the Dodge Charger or how his prosecution was premised on allegedly false evidence contained in the affidavit for the search warrant. Therefore, the Court will dismiss the Fourth Amendment claim without prejudice, permitting Plaintiff to amend the complaint if he can allege additional facts in support of his claim.

5. *Claims Against Public Defender and Public Defender Investigator*

a. <u>*Allegations in the complaint*</u>

Plaintiff alleges that Smolensky, his "Public Defender Pool Attorney," engaged in the following misconduct in violation of Plaintiff's civil rights and state tort laws:

> ·assisted the State Prosecutor to create the illusion of probable cause to cover-up wrongdoing;
>
> · falsified legal documents to make it seem as if Plaintiff was admitting to the crimes charged by the prosecutor;
>
> · failed to disclose 21 DVDs to Plaintiff that were produced by the State in discovery;
>
> ·forced Plaintiff to use the recorded inmate telephone and allowed Assistant Prosecutor Hutchinson to listen to recorded calls made by Plaintiff;
>
> ·falsified statements made by Plaintiff to create the illusion that Plaintiff admitted his guilt;
>
> ·during formal attorney-client phone calls, made racist statements

(Compl., ¶¶ 87-92.)

Plaintiff also alleges, verbatim, that he was deprived of the following rights:

> ·to be free of a Public Defender – Pool Attorney who [conspires] with State Officials against plaintiff;
>
> ·to be heard by way of Legal Phone Calls;
>
> ·to be heard by way of Defense Strategy Instruction Legal Letters written to his Public Defender - Pool Attorney;
>
> ·to not be harassed by a Public Defender Pool Attorney;

·to not be verbally abused by a Public Defender - Pool Attorney;

·to effective assistance of legal counsel by a Public Defender - Pool Attorney;

·to not be ignored by a Public Defender-Pool Attorney in open Court;

·to be free of perjured testimony by a Public Defender - Pool Attorney;

·to be afforded and view defense discovery which was provided by the State Attorney Prosecutor to Public Defender- Pool Attorney;

·conspiracy of Public Defender with State Official; a State Attorney Prosecutor in order to deprive client/plaintiff of federal rights by making Plaintiff use a knowingly State recorded inmate phone to correspond with Plaintiff;

·By depriving the Plaintiff the right to a conflict free Public Defender Investigator who was coerced into perjuriously written 'investigative reports and documents by the Public Defender - Pool Attorney;

·By depriving Plaintiff the right to be free of perjured reports by a Public Defender - Pool Attorney; in concert with the Public Defender Investigator;

·By depriving Plaintiff the right to not incriminate himself by a coerced Public Defender Investigator by the Public Defender - Pool Attorney;

·By depriving Plaintiff the right to a Defense Strategy that is not fraudulently prepared by his Public Defender - Pool Attorney;

·By depriving Plaintiff the right to have a Public Defender Investigator who is not coerced into advocating the State Attorney

> Prosecutor by his Public Defender - - Pool Attorney;
>
> ·By depriving Plaintiff the right to have a Public Defender - Pool Attorney who is not assisting the State Attorney Prosecutor in a State initiated cover-up of wrongdoing;
>
> ·By depriving Plaintiff the right to have a Public Defender - Pool Attorney who says more than five words at Pretrial Motion Hearings.

(Compl., Counts VI and VII.) Plaintiff also alleges Ivan Mendez, the defense investigator, made a number of allegedly false statements to assist the prosecution. (Compl. ¶¶ 94-102.) The context of the alleged statements by the investigator, including to whom the statements were made and when and how they were used in the prosecution, is unclear.

### b. *Analysis*

"It is well established that a public defender performing a lawyer's traditional functions as counsel to a defendant is not acting under color of state law[,]" which is a requisite element of a § 1983 claim. Calhoun v. Young, 288 F. App'x 47, 49 (3d Cir. 2008) (citing Polk County v. Dodson, 454 U.S. 312, 325 (1981)). Moreover, in the Third Circuit, "public defenders and court-appointed counsel acting within the scope of their professional duties are absolutely immune from civil liability under § 1983." Ellison v. Smith, 778 F. App'x 195, 196 (3d Cir. 2019) (citing Black v. Bayer, 672 F.2d 309, 320 (3d Cir. 1982); *abrogated on other grounds by* D.R. v. Middle Bucks Area Vocational Tech. Sch.,

972 F.2d 1364, 1368 n.7 (3d Cir. 1992)). Likewise, "an investigator employed by a public defender is absolutely immune for his investigative assistance in the course of a criminal defense." Clark v. Vernon, 228 F. App'x 128, 131 (3d Cir. 2007) (citing Black, 672 F.2d at 321)). Therefore, all § 1983 claims against Smolensky and Mendez will be dismissed with prejudice, with the exception of the conspiracy claims addressed below. See Tower v. Glover, 467 U.S. 914, 916 (1984) (public defenders are not immune from claims that they conspired with a state prosecutor to get a conviction, in violation of 42 U.S.C. § 1983).

6. *Absolute Prosecutorial Immunity and Malicious Prosecution*

Prosecutors enjoy absolute immunity under § 1983 for their activities that are "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). In the Third Circuit, the "'prosecutorial immunity analysis focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions.'" Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020) (quoting Odd v. Malone, 538 F.3d 202, 210 (3d Cir. 2008)). Apart from the conspiracy claims discussed below, the only claim the Court can discern against Assistant Prosecutor Hutchinson is that she prosecuted Plaintiff for armed robberies without probable cause. The malicious prosecution claim is premature because Plaintiff alleged that he

was a pretrial detainee at the time he filed his complaint. A malicious prosecution claim requires that the criminal prosecution ended in a favorable termination for the plaintiff. See Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2009) (describing elements of malicious prosecution claim, including that criminal prosecution ended in the plaintiff's favor). If the criminal proceeding ended favorably for Plaintiff, he may file an amended complaint alleging additional facts in support of his claim that Hutchinson lacked probable cause to prosecute. The claim is also subject to the prosecutorial immunity analysis, which the Court lacks sufficient information to consider at this time. Plaintiff's malicious prosecution claims against the other defendants are likewise premature and will be dismissed without prejudice.

7.  *Conspiracy*

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege some factual basis to support an agreement between the conspirators to violate the plaintiff's rights and concerted action by the conspirators. Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009). A conclusory allegation that there was an agreement is insufficient to state a claim. Brown v. Deparlos, 492 F. App'x 211, 215 (3d Cir. 2012).

Plaintiff does not allege a factual basis for his conclusion that there was an agreement between Assistant Prosecutor Hutchinson and Smolensky and/or Mendez to convict Plaintiff by

deception or fabrication of evidence. "[T]he bare allegation of an agreement is insufficient to sustain a conspiracy claim." <u>Michtavi v. United States</u>, 345 F. App'x 727, 731 (3d Cir. 2009). The same is true of the allegations that Mendez conspired with Smolensky and the prosecutor to make false statements in an interview. Furthermore, Plaintiff has not alleged how the statements were false or how they were used against him in the criminal proceeding. The Court will dismiss the conspiracy claims against Hutchinson, Smolensky and Mendez without prejudice.

       8.   *Policy or custom claims against counties*

Plaintiff makes the following allegation against the counties of Burlington, Camden and Gloucester:

> All Constitutional Violations and Injuries to plaintiff arise from an Formal/Official Policy and Longstanding Custom as a County or Municipal actor of using [Implicit Bias] to illegally search, seize, arrest, criminally charge, indict and prosecute it's law abiding African American citizens.

(Compl. ¶ 9) (brackets in original.) Plaintiff has failed to allege any factual basis in support of his claim that these counties had either an official policy or a custom of treating similarly situated non-African American citizens differently than Plaintiff with respect to his search and seizure and prosecution. <u>See</u> <u>e.g.</u> <u>Groman v. v. Twp. of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995) ("The record will not support a reasonable jury finding of a municipal policy or custom of 'negligent supervision' which rises

to the level of deliberate indifference required for § 1983 liability.") Therefore, the Court will dismiss the § 1983 claims against the counties without prejudice.

C.   New Jersey State Law Claims

"Federal courts are courts of limited jurisdiction." Home Depot U. S. A., Inc. v. Jackson, 139 S. Ct. 1743, 1746, reh'g denied, 140 S. Ct. 17 (2019) (quotation omitted). Plaintiff does not allege diversity jurisdiction; therefore, he presumably relies on supplemental jurisdiction to bring his state law claims in federal court. See 28 U.S.C. § 1367(a). Pursuant to Section 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim … if … the district court has dismissed all claims over which it has original jurisdiction." For the reasons discussed above, the Court will dismiss Plaintiff's federal claims under 42 U.S.C. § 1983. Thus, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims at this time.

D.   Request for Discovery, Stay, and Appointment of Counsel

Plaintiff's requests for discovery, to stay this proceeding, and for appointment of pro bono counsel are moot because the Court will dismiss the complaint in its entirety. If Plaintiff files an amended complaint, he may renew his requests for a stay of the proceeding and for appointment of pro bono counsel. If the amended

complaint is permitted to proceed, discovery generally begins only after the operative complaint is served on the defendants.

III. CONCLUSION

For the reasons discussed above, the Court will dismiss the complaint without prejudice, and dismiss as moot Plaintiff's requests for discovery, to stay the proceeding, and for appointment of pro bono counsel.

An appropriate order follows.

DATE:  June 23, 2021

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
